**UNITED STATES of America,**
**Plaintiff,**

v.

**Ray Lee D'ARMOND, Brian Keith**
**Lindberg, Defendants.**

**Nos. 98–40076–01–SAC,**
**98–40076–02–SAC.**

United States District Court,
D. Kansas.

Aug. 13, 1999.

---

Anthony W. Mattivi, Office of U.S. Atty., Topeka, KS, for Plaintiff.

Randy L. Baird, Topeka, KS, Mark L. Bennett, Jr., Bennett & Dillon, L.L.P., Topeka, KS, Chris N. Cowger, Topeka, KS, Stephen W. Kessler, Topeka, KS, Eric Kjorlie, Topeka, KS, J. Richard Lake, Holton, KS, William K. Rork, Rork Law Office, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On November 19, 1998, the grand jury returned a superseding indictment [1] charging Ray Lee D'Armond, Jr. and Brian Keith Lindberg with conspiring to manufacture in excess of 10 grams of methamphetamine (in violation of 21 U.S.C. § 841(a)(1)), attempting to manufacture methamphetamine (in violation of 21 U.S.C. § 841(a)(1), and creating a substantial risk of harm to human life by attempting to manufacture methamphetamine) (in violation of 21 U.S.C. § 858). D'Armond is also charged with one count of being a felon in possession of a firearm (in violation of 18 U.S.C. § 922(g)(1)), one count of using and carrying a firearm during and in relation to a drug trafficking crime (in violation of 18 U.S.C. § 924(c)) and two counts of possessing listed chemicals (iodine and ephedrine) with the intent to manufacture methamphetamine (in violation of 21 U.S.C. § 841(d)(1)).

### Competency of Ray Lee D'Armond

Based in part upon the concerns of defendant's counsel, Eric Kjorlie, regarding the mental competency of his client, on December 9, 1998, this court entered an order requiring the marshals to transport D'Armond to the Medical Facility for Prisoners in Springfield, Missouri, for the purpose of evaluating the defendant to determine whether the defendant is presently suffering from a mental disease or defect rendering him incompetent to stand trial. The court, the defendant and the prosecution have since received copies of that competency evaluation. The report indicates that the defendant is competent to stand trial.

On March 19, 1999, prior to considering the pretrial motions filed by the defendants, the court conducted a hearing to determine whether the defendant is competent to stand trial. As it announced in open court, the court, having considered the Forensic Psychological Report prepared by Richard L. DeMier, Clinical Psychologist at the United States Center for Federal Prisoners at Springfield, Missouri, the arguments of counsel and knowing of no evidence indicating that the defendant is not competent to stand trial, finds by a preponderance of the evidence that the defendant, Ray Lee D'Armond, is able to understand the nature and consequences of the proceedings against him and is able to assist properly in his own defense. Although it is clear that the defendant was then displeased with his appointed attorney, there is no indication that he does not currently have the ability to consult with an lawyer with a reasonable degree of rational understanding. D'Armond's unique interpretations of the law—as evidenced by his pro se motion to dismiss for lack of jurisdiction—are not of such a nature as to cast doubt on the court's conclusion that he has a rational understanding of the proceedings against him.

**Motions pertaining to appointment of new counsel: PRO SE MOTION by deft Ray Lee D'Armond Jr for order for new appointment of counsel (Dk.38); Motion for Appointment of New Counsel (Dk.69); Counsel's response to Motion for Appointment of New Counsel (Dk.70); Counsel's Motion to Withdraw (Dk.78).**

On August 21, 1998, Magistrate Judge Newman appointed Mark Bennett to rep-

---

1. The original indictment only named D'Armond as a defendant. The superseding indictment added Lindberg as a defendant. The superseding indictment also adds two counts concerning the alleged possession of iodine and ephedrine with the intent to manufacture methamphetamine.

**1192**

resent D'Armond. On September 29, 1998, Bennet filed a motion to determine the propriety of his continued representation in this case as his law firm had previously represented some of the police officers involved in the investigation of this case. On October 6, 1998, the court entered an order relieving Bennett of the appointment. Eric Kjorlie, an experienced member of the federal bar, was appointed to represent D'Armond.

Since that time, D'Armond has repeatedly expressed the opinion that Mr. Kjorlie has not represented him in an appropriate and zealous manner. D'Armond's motion indicates that there "exists a complete breakdown in communication or an irreconcilable difference" and that he should be appointed a new attorney. D'Armond filed a complaint against Kjorlie with the Kansas Office of Disciplinary Administrator, essentially challenging Kjorlie's decision to report his concerns that D'Armond suffered from a mental illness to the court and the prosecution.

Although the disciplinary administrator has concluded that Kjorlie has not committed any violation of the Model Rules of Professional Conduct as alleged by D'Armond, Kjorlie agrees that his relationship to D'Armond has grown acrimonious. D'Armond ostensibly believes that Kjorlie is acting in concert with the prosecution. In short, Kjorlie asks to be relieved from the appointment in this case as the conflict that exists between D'Armond and himself cannot be repaired.

### Substitution of Counsel

■ " 'To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *United States v. Padilla,* 819 F.2d 952, 955 (10th Cir.1987) (quoting *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982)).

### Conflicts

■ While the Sixth Amendment demands that counsel to criminal defendants act as their advocates, the rule is not absolute in any sense. Counsel does not have to take every position and make every argument that the client requests. *See United States v. Dawes,* 874 F.2d 746, 748 (10th Cir.) (per curiam) ("There is no right to counsel who will blindly follow a defendant's instructions."), *cert. denied,* 493 U.S. 920, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989).

### Conflicts and Issues of Competency

■ The Sixth Amendment does not require the defendant's attorney to adhere to the defendant's wish to avoid the issue of the defendant's competency. *United States v. Boigegrain,* 155 F.3d 1181, 1187 (10th Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 828, 142 L.Ed.2d 686 (1999). "[W]hen a lawyer has reason to believe that her client may not be mentally competent to stand trial, she does not render ineffective assistance of counsel by making her concerns known to the court." *Id.*

### Analysis

As the Tenth Circuit's opinion in *Boigegrain* makes absolutely clear, Kjorlie acted appropriately and ethically, fulfilling his obligations to both the court and his client, when he reported his concerns about the mental competency of his client to the court. Notwithstanding this observation, it is clear to the court that there was a complete breakdown of communications between client and counsel and that irreconcilable differences existed between D'Armond and his appointed attorney. Consequently, Mr. Kjorlie was relieved of his appointment.

■ The court appointed Richard Lake to represent D'Armond. Because newly appointed counsel could not be expected to be prepared that day or in the near future, the court continued the pretrial motions hearing. As announced at the March 19,

1999, hearing, the court finds that this period of delay is excludable under the Speedy Trial Act. Specifically, the court finds that the ends of justice served by granting this continuance outweigh the best interest of the public and the defendant in a speedy trial. See 18 U.S.C. § 3161(h)(8).

Suffice it to say that D'Armond grew dissatisfied with Mr. Lake and the representation he provided. On June 24, 1999, this court entered a memorandum and order granting D'Armond's "Motion for Appointment of New Counsel" (Dk.100). See (Dk.112). The court thanks Mr. Lake for accepting the appointment. Chris Cowger, another experienced member of the bar, was appointed to represent the defendant.

**Motion to Dismiss Counsel (Dk.87); Response to Defendant's Motion to Dismiss Counsel [filed by defendant's appointed attorney, Steve Kessler] (89).**

On April 19, 1999, Lindberg filed a hand-written pro se motion asking the court to appoint him new counsel. Steve Kessler, an experienced member of the federal bar, accepted the appointment to represent Lindberg in this case. Lindberg's complaints include: inability to reach counsel; defendant's belief that counsel is not "acting in my best interests," counsel "failed to make planned contact," and "failed to act or respond to specific requests." Lindberg's motion goes on to indicate that "a very healthy animosity has been built up on my part. I don't feel he is doing all he can. After seeing him in action at a bond hearing, and wasn't prepared, (I felt) I need a trial lawyer. I don't feel private lawyers that are appointed do all they can would like to request a public defender."

Kessler filed a response challenging the allegations of incompetence or inaction alleged by Lindberg. Kessler apparently believes he has made a reasonable effort to respond to Lindberg's calls, although Kessler notes that "Lindberg has called counsel's office collect numerous times, some-

times 5 to 6 times a day. Counsel's office has instructions not to accept the calls if counsel is not available." Kessler indicates that he has fulfilled all of the defendant's specific requests, with the exception of not filing a motion to dismiss on the basis of lack of jurisdiction "which in counsel's opinion would be frivolous."

On May 7, 1999, the court conducted a hearing to consider this motion. Both the defendant and the defendant's counsel agreed, upon further reflection, that their problems are not irreconcilable. At the suggestion of the court, the defendant and his counsel agreed to meet and work out any communication problems. The defendant's motion to dismiss counsel (Dk.87) is denied.

Following the denial of this motion, Lindberg retained the services of Randy Baird. Steve Kessler was permitted to withdraw as appointed counsel. The court thanks Mr. Kessler for accepting the appointment.

**Oral Motion of D'Armond's Appointed Counsel to Withdraw**

Immediately prior to the motions hearing scheduled to commence on July 28, 1999, Chris Cowger, the fourth attorney appointed to represent D'Armond, orally requested permission to withdraw as counsel. In open court, D'Armond stated that he was pleased with Cowger's representation but did not oppose his counsel's request to withdraw if Mr. Cowger did not believe that he could continue to represent his interests in this case. After hearing counsel's ex parte, in camera, proffer,[2] the court granted Cowger's motion to withdraw. The court thanks Mr. Cowger for accepting the appointment.

Over the government's objection, the defendants' motion for continuance of the motions hearing was granted and the hearing continued to a date to be determined. This continuance, while inconveniencing the government and its witnesses (some of which had made personal and professional

---

2. Counsel's proffer during this in camera pro- ceeding was placed under seal.

sacrifices to appear at the hearing) was necessary because Mr. D'Armond was no longer represented by legal counsel. Lindberg agreed that a continuance which would permit the appointment of new counsel for his co-defendant also served his own interests in the defense of this case.

After considerable thought, the court requested William Rork, an experienced member of the federal and state bar, to accept the appointment to represent D'Armond. On August 10, 1999, Mr. Rork accepted the appointment to represent D'Armond.

■ The court deems the occasion of the appointment of the fifth attorney[3] to represent Mr. D'Armond as an appropriate juncture in this case to inform the defendant that his constitutional right to counsel does mean that he has a right to counsel of his own choosing and that his right to counsel is one that may be expressly or impliedly waived. "Although the Sixth Amendment provides defendants with the right to counsel in criminal cases, defendants who are appointed counsel are not entitled to counsel of their own choosing." *United States v. Frech*, 149 F.3d 1192, 1998 WL 317472 at \*2 (10th Cir.1998) (*citing United States v. Nichols*, 841 F.2d 1485, 1504 (10th Cir.1988)). It is beyond doubt that a defendant is not entitled to an attorney who ascribes to his or her own unique interpretations of the law. *See United States v. Olson*, 961 F.2d 221, 1992 WL 78081 (10th Cir.1992) ("A defendant's right to counsel does not imply the absolute right to counsel who agrees with Defendant's views of the tax laws.") (*citing United States v. Weninger*, 624 F.2d 163, 166 (10th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980)).

An accused has a Sixth Amendment right to waive his right to counsel and conduct his own defense in a criminal case. *Faretta v. California*, 422 U.S. 806, 821, 832, 95 S.Ct. 2525, 2534, 2539–40, 45 L.Ed.2d 562 (1975); *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991), *cert. denied*, 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992). However, a waiver of counsel will not be valid unless it is " 'an intentional relinquishment or abandonment of a known right or privilege.' " *Willie*, 941 F.2d at 1388 (*quoting United States v. McConnell*, 749 F.2d 1441, 1450–51 (10th Cir. 1984)). In determining whether a defendant has effectively waived his right to counsel we must conduct two distinct inquiries. First, we must determine whether the defendant voluntarily waived his right to counsel. *See United States v. Padilla*, 819 F.2d 952, 955–56 (10th Cir.1987). Second, we must determine whether the defendant's waiver of his right to counsel was made knowingly and intelligently. *See id.* at 956. The defendant's waiver will be deemed effective only if it was made voluntarily, knowingly, and intelligently. This court "will indulge in every reasonable presumption against waiver." *Baker v. Kaiser*, 929 F.2d 1495, 1500 (10th Cir. 1991). . . .

The question of whether a defendant's waiver of counsel is voluntary turns on whether the defendant's objections to his counsel are such that he has a right to new counsel. *Padilla*, 819 F.2d at 955. In other words, for the waiver to be voluntary, this court must be confident the defendant is not forced to make a "choice" between incompetent counsel or appearing pro se. *Silkwood*, 893 F.2d at 248. However, "a refusal without good cause to proceed with able appointed counsel is a 'voluntary' waiver." *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir.1976). Thus, unless a

---

3. The court recognizes that Mr. Bennett withdrew based upon a conflict of interest. However, the other three attorneys appointed to represent D'Armond—counsel who were asked by the defendant to withdraw as counsel or felt compelled on their own motion to seek permission from the court to withdraw—are persons regularly appearing in this court and who have, without exception, each carried out their duties of defending criminal defendants in other cases in a highly competent manner.

defendant establishes good cause entitling him to the appointment of new counsel, the defendant's decision to waive counsel will be deemed voluntary. *See Padilla,* 819 F.2d at 955.

*United States v. Taylor,* 113 F.3d 1136, 1139–44 (10th Cir.1997).

Wavier of the right to counsel may be express or implied. *See Willie,* 941 F.2d at 1390 (the "[defendant's] clear expression that he could only work with an attorney who shared his views . . . [inter alia] constitute[d] a valid implied waiver of his right to counsel") (collecting cases discussing implied waiver of right to counsel). "A defendant's right to obtain counsel of his choice must be balanced against the need for the efficient and effective administration of criminal justice." *Weninger,* 624 F.2d at 166 (10th Cir.) (*citing United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1214 (3d Cir.1969)).

" '(W)e have recognized a right of a defendant to proceed without counsel and to refuse the representation of . . . counsel. *** (H)e may not use this right to play a 'cat and mouse' game with the court *** or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel.' "

*Weninger,* 624 F.2d at 166 (*quoting Kates v. Nelson,* 435 F.2d 1085, 1088–89 (9th Cir.1970)) (*quoting United States ex rel. Davis v. McMann,* 386 F.2d 611, 618–19 (2d Cir.1967)).

In this case, the defendant has repeatedly stated his interest in (1) dismissal of this case on jurisdictional grounds and (2) a speedy trial. The defendant's jurisdictional challenge is addressed below. The defendant's oral statements that his right to a speedy trial has been violated is without merit.

The Speedy Trial Act is designed to protect a defendant's constitutional right to a speedy trial and serve the public interest of adjudicating criminal proceedings promptly. *See United States v. Mora,* 135 F.3d 1351, 1354 (10th Cir.

1998). The Act requires that a criminal defendant's trial commence within seventy days of the filing of the indictment or from the date the defendant first appears before a judicial officer of the court, whichever is later. See 18 U.S.C. § 3161(c)(1). Certain periods of delay are excluded and do not count as part of the seventy day limit. See 18 U.S.C. § 3161(h)(1)–(9).

*United States v. Lugo,* 170 F.3d 996, 1000–01 (10th Cir.1999).

The defendant's dissatisfaction with his prior appointed counsel and the need for new counsel to have time to adequately prepare the defense has resulted in some of the continuances that have ultimately resulted in the delay of the trial in this matter. Because a substantial number of days are excludable under the relevant provisions of the Speedy Trial Act, *see* 18 U.S.C. § 3161(h), the defendant's statutory right to a speedy trial has not been violated.

So that it is clear, it is the court's opinion that the defendant's own unreasonable demands upon counsel and unrealistic expectations regarding the possible success of his jurisdictional challenge have resulted in each attorney's withdrawal as well as the delays concomitant with appointing new counsel. Absent good cause proven to this court's satisfaction, the court anticipates that Mr. Rork is the appointed attorney who will represent D'Armond throughout the balance of these proceedings.

### Pending Motions

This case now comes before the court upon the following pretrial motions filed by the defendants that remain undecided:

**Motions filed by D'Armond, Jr. (now represented by William Rork):**

1. Motion to Dissmiss (Sic) for Lack of Jurisdiction (Dk.71) (pro se motion); Supplemental Memorandum Brief in Support of Defendant Ray L. D'Armond, Jrs., (sic) Motion to Dissmiss (sic) for lack of jurisdiction (Dk.91).

2. Motion to Suppress (Dk.16); Brief in Support (Dk.17); Supplemental Brief in Support (Dk.29).

3. Motion to Disclose Identity of Confidential Informant (Dk.18); Brief in Support (Dk.19).

4. Motion to Compel Discovery Regarding Informant(s) (Dk.56).

5. Motion for Disclosure [of Rule 404(b) evidence] by Government (Dk.55).

A motion for discovery (Dk.20) was summarily denied by minute order for failure to comply with this court's criminal procedural guidelines. *See* Dk. 21.

**Motions filed by Lindberg (represented by Randy Baird):**

1. Motion to Disclose Identity of Confidential Informant (Dk.63); Memorandum in Support (Dk.64).

2. Motion for Disclosure of Promises or Agreements (Dk.60).

3. Motion for Production of Impeachment Evidence Regarding Government Witnesses (Dk.59).

4. Motion for Disclosure of Prior or Subsequent Bad Acts or Criminal Conduct (Dk.58).

5. Motion to Suppress Evidence (Dk.61); Memorandum in Support of Motion to Suppress (Dk.62).

6. Motion to Suppress Testimony (Dk.57).

The government has filed a consolidated response to the defendants' pretrial motions. *See* (Dk.72).

Although the defendants' motions to suppress related to the traffic stop and search of the mobile home will require the court to consider evidence, the balance of the motions present legal questions that can be decided on the briefs. Given the number of continuances and other problems that have been associated with this case, the court deems it appropriate to rule on these motions at this time as submitted on the briefs.

**Motion to Dissmiss (Sic) for Lack of Jurisdiction (Dk.71) (pro se motion):**

In a pro se motion filed by D'Armond, the defendant seeks an order dismissing the pending case against him for lack of jurisdiction. The defendant's argument goes something like this: D'Armond is a resident of Kansas. As a resident of Kansas, D'Armond claims that he did not have adequate notice that he was subject to federal drug trafficking laws. D'Armond apparently believes that because he was never afforded a hearing in court providing him specific notice that he was subject to the federal drug trafficking laws that it would be unfair to subject him to prosecution on the current charges. Intertwined throughout D'Armond's argument is the suggestion that federal laws do not extend to state lands. Through some bit of tortured logic, the defendant ultimately arrives at the conclusion that this court has no jurisdiction over his person in this case. Although not entirely clear, D'Armond's motion also appears to challenge the constitutionality of the federal drug trafficking laws.

The government succinctly responds, arguing that the grand jury has returned a superseding indictment which charges the defendant with committing crimes against the United States and within the District of Kansas. "Pursuant to Article 3 of the United States Constitution, Congress has vested criminal jurisdiction in the District Courts over all offenses against the laws of the United States, including those charged in the seven count [superseding] indictment. 18 U.S.C. § 3231." Government's Response Brief (Dk.72) at 2.

In support of his motion, D'Armond filed a sixty-seven page pleading titled "Supplemental Memorandum Brief in Support of Defendant Ray L. D'Armond, Jrs., (sic) Motion to Dissmiss (sic) for lack of jurisdiction (Dk.91)."

### Analysis

█ D'Armond's argument that he is immune from criminal prosecution in this case because he was not provided a prior hearing to give him personal notice that drug trafficking violates federal law runs aground quickly. Subject to exceptions not relevant in this case, the general rule

is that ignorance of the law will not excuse criminal conduct. *See Bryan v. United States,* 524 U.S. 184, 118 S.Ct. 1939, 1946, 141 L.Ed.2d 197 (1998) ("[U]nless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense."); *Dover v. United States,* No. Crim.A. 96–181–1, 1999 WL 239281, *4 (E.D.Penn. April 8, 1999) ("In order to validly convict a defendant of a statute which requires a knowing violation, there is no requirement that the United States prove beyond a reasonable doubt that the defendant knew that his conduct was unlawful."). *See also Barlow v. United States,* 32 U.S. (7 Pet.) 404, 411, 8 L.Ed. 728 (1833) (Story, J.) ("It is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally...."); *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 69 L.Ed. 953 (1925) ("All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them...."). The court simply notes that the Controlled Substances Act became effective on May 1, 1971.

■ D'Armond's argument that this federal court does not have jurisdiction over this prosecution against him because his alleged offenses occurred on state lands is equally ill-founded. "The district courts of the United States have original jurisdiction over all violations of federal law." *United States v. Owens,* 156 F.3d 1245, 1998 WL 514584 (10th Cir. Aug.13, 1998) (Table) (*citing* 18 U.S.C. § 3231). "The Supremacy Clause, the Civil War, the decisions of the Supreme Court, and acts of Congress make it clear that so long as there is a constitutionally authorized feder-

al nexus, the federal government is free to act anywhere within the United States." *United States v. Lampley,* 127 F.3d 1231, 1246 (10th Cir.1997) (rejecting argument that States are sovereign and the federal government is not authorized to prosecute crimes committed within the states' borders), *cert. denied,* —— U.S. ——, 118 S.Ct. 1098, 140 L.Ed.2d 153 (1998). *See Dover,* 1999 WL 239281 at *2 ("It is well-established that federal courts have concurrent jurisdiction with state courts over offense against the lawful authority of the United States.") (*citing Heath v. Alabama,* 474 U.S. 82, 93, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) and *United States v. Giovanelli,* 945 F.2d 479, 491 (2d Cir.1991)).[4]

■ D'Armond's suggestion that the federal government lacks authority to make it unlawful to traffic drugs is equally meritless. The federal courts have uniformly rejected challenges to the constitutionality of the Comprehensive Drug Prevention and Control Act of 1970. *See United States v. Westbrook,* 125 F.3d 996, 1009 (7th Cir.) ("We join the other circuits that uniformly have held, after *[United States v.] Lopez,* [514 U.S. 549 (1995)] that it was within the authority of the Congress under the Commerce Clause to create drug laws criminalizing narcotics transactions such as those found under 21 U.S.C. §§ 846 and 841."), *cert. denied,* 118 S.Ct. 643 (1997); *see United States v. Wacker,* 72 F.3d 1453, 1475 (10th Cir.1995) ("21 U.S.C. § 841(a)(1) is constitutional."), *cert. denied,* 519 U.S. 848, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996).

The defendant's motion to dismiss for lack of jurisdiction is denied. So that it is clear, this court as well as every other

---

4. In *United States v. Davis,* 906 F.2d 829 (2nd Cir.1990), the Second Circuit explained the doctrine of dual sovereignty:

One of the by-products of our nation's federal system is the doctrine of "dual sovereignty." ... This doctrine rests upon the basic structure of our polity. The states and the national government are distinct political communities, drawing their separate sovereign power from different

sources, each from the organic law that established it. Each has the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses. When a single act violates the laws of two sovereigns, the wrongdoer has committed two distinct offenses.

*Id.* 832.

federal court including the Tenth Circuit, considers the defendant's challenge to this court's jurisdiction and the constitutionality of federal drug trafficking laws to be completely frivolous. *See United States v. Wacker,* 173 F.3d 865, 1999 WL 176171 (10th Cir.1999) (describing arguments similar to those advanced by D'Armond as "ludicrous"). The defendant's challenge to these well-settled propositions is utterly meritless. Because these arguments are devoid of merit, no counsel is ethically required to advance these challenges, irrespective of his client's fervent belief to the contrary. Consequently, counsel's unwillingness to press these issues will not serve as a basis for obtaining new counsel in this case. Nor shall the defendant's jurisdictional challenges play any further part in this case before this court. In the event the defendant is convicted at trial, he has preserved his jurisdictional challenges for appeal. In short, this court will not waste any more of its limited resources addressing the defendant's frivolous jurisdictional challenge.

**Motion to Disclose Identity of Confidential Informant (Dk.18); Brief in Support (Dk.19); Motion to Compel Discovery Regarding Informant(s) (Dk.56); Motion to Disclose Identity of Confidential Informant (Dk.63); Memorandum in Support (Dk.64).**

Both defendants seek an order compelling the government to disclose the identity of the confidential informant(s) in this case. The defendants contend that the identity of the CI is relevant in this case and that the interests of justice require disclosure. In support of their argument that the CI's identity should be disclosed, the defendants contend that the CI's communications are claimed to support or establish probable cause in this case, and therefore disclosure is appropriate.

The government contends that "revealing the identity of the informant in this case is unwarranted because, as far as is presently known to the government, the confidential informant did not participate in any transactions or in the manufacture

of methamphetamine." In short, the government suggests that the CI was a mere tipster whose information regarding the defendant's illegal methamphetamine sales and manufacture was received from other independent sources, including "information from Crime Stoppers tips and from citizen complaints." If the government decides to call the CI at trial, the government agrees to reveal the CI's identity and other pertinent information.

### Legal Standards

■ The Supreme Court in *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), recognized the compelling public interest in favor of effective law enforcement and created a privilege that permits the government to withhold the identity of informants. *United States v. Mendoza–Salgado,* 964 F.2d 993, 1000 (10th Cir.1992). Though anonymity encourages and protects informants, the Supreme Court held that the privilege yields to fairness if the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. 623. A decision on disclosure of identity entails "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." 353 U.S. at 62, 77 S.Ct. 623. Striking a proper balance depends on "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

■ The burden is on the defendant to come forward with evidence establishing that the *Roviaro* criteria favor disclosure. *United States v. Blevins,* 960 F.2d 1252, 1258–59 (4th Cir.1992). More than suspicion or speculation is needed to meet the defendant's burden. *United States v. Williams,* 898 F.2d 1400, 1402 (9th Cir.1990). " 'The defendant must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would

be relevant to a material issue of guilt or innocence.'" *Blevins,* 960 F.2d at 1259 (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 510[06] (1991)); *see also United States v. Ridley,* 814 F.Supp. 992, 996 (D.Kan.1993).

As a general rule, the Tenth Circuit requires disclosure when the informant's testimony "might be relevant to the defendant's case and justice would best be served by disclosure." *United States v. Reardon,* 787 F.2d 512, 517 (10th Cir. 1986). In practice, the Tenth Circuit has not required disclosure "where the information sought 'would be merely cumulative,' or where the informer did not participate in the illegal transaction," *Mendoza–Salgado,* 964 F.2d at 1001 (*quoting United States v. Scafe,* 822 F.2d 928, 933 (10th Cir.1987)) (other citations omitted), where the informant is not a participant or witness to the crime, *United States v. Brantley,* 986 F.2d 379, 383 (10th Cir.1993), or where the informant is a mere tipster, *United States v. Wynne,* 993 F.2d 760, 766 (10th Cir.1993).

### Analysis

*D'Armond's Discovery Request:*

 D'Armond's claims to need the CI's identity to challenge the initial stop of his truck. Because the subjective intent of the officers when making the traffic stop is irrelevant for Fourth Amendment analysis, *see Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *United States v. Botero–Ospina,* 71 F.3d 783 (10th Cir.1995) ("[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant, for purposes of Fourth Amendment review, whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop." [*United States v.*] *Ferguson,* 8 F.3d [385] at 391 [ (6th Cir.1993) ]. It is also irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated "any one of the multitude of applicable traffic and equipment regulations" of the jurisdiction) (footnote omitted), information about the CI (who provided information which may have focused the officer's attention on D'Armond's truck) is irrelevant for purposes of evaluating D'Armond's motion to suppress. This is so because the officers stopping D'Armond's truck ostensibly did so because his vehicle had a broken tag light. The court will determine the lawfulness of the stop of the truck when it rules on the defendant's motion to suppress.

*Lindberg's Discovery Request:*

 Lindberg's request is on different footing than D'Armond's as Lindberg seeks to challenge the warrant which authorized the search of D'Armond's residence, a mobile home where Lindberg claims he was staying as a guest. The search warrant application was prepared following the stop of D'Armond's truck and the discovery of contraband. The problem for Lindberg is that he has made no effort to meet the requirements of *Franks.* In fact the defendant has not submitted a copy of the affidavit filed in support of the request for a search warrant. Lindberg appears to argue that the search warrant was issued largely on information from the CI. According to the defendant, the validity of the warrant depends on the CI's knowledge and credibility, neither of which can be assessed without knowing the CI's identity.

The defendant's argued reasons for disclosure are insufficient as a matter of law. The defendant has not requested an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The defendant has not made or even attempted to make a substantial preliminary showing that the

affiant intentionally or recklessly included a false statement in the warrant affidavit and that the false statement is necessary to the probable cause finding. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77.

Apparently the defendant seeks to learn the informant's identity in the bare hope of finding evidence to support a later *Franks* hearing request. Circuit courts have upheld non-disclosure under these same circumstances:

> Nonetheless, they seek disclosure of the informant's identity in the hope that disclosing the identity of the informant will lead to evidence that will help them make a *Franks* showing. In these circumstances, we believe that the *Roviaro* balance will tend to tip against disclosing the informant's identity. A defendant who merely hopes (without showing a likelihood) that disclosure will lead to evidence supporting suppression has not shown that disclosure will be "relevant and helpful to the defense ... or is essential to a fair determination" of the case, *Roviaro,* 353 U.S. at 60–61 [77 S.Ct. at 628]. (other citations omitted).

In *Franks,* the Court left open "the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing [the affiant's] falsity has been made." 438 U.S. at 170 [98 S.Ct. at 2684]. (emphasis added). While expressly not reaching the issue, the Court's statement suggests that if revelation of the identity of an informant is ever required in the context of a motion for a *Franks* hearing, it would only be after the defendant made a substantial preliminary showing of the affiant's reckless or intentional disregard for the truth. Several courts of appeals have, at least implicitly, so held. *See, e.g., United States v. Kiser,* 716 F.2d 1268, 1271–73 (9th Cir.1983) (holding that defendant was entitled to disclosure of informant but only because defendant had first made substantial preliminary showing of affiant's untruthfulness entitling defendant to a *Franks*

hearing); *[United States v.] Schauble,* 647 F.2d [113] at 116–17 [(10th Cir. 1981)] (holding that because the defendant had not made a substantial showing of the affiant's untruthfulness, the district court did not abuse its discretion in denying defendant's request for in camera disclosure of informant whose tip was basis for search warrant). Similarly, we hold here that, because the defendants' offer of proof failed to show that the affiant was untruthful, the district court did not abuse its discretion in refusing to order disclosure of the informant.

*United States v. Brown,* 3 F.3d 673, 679–80 (3rd Cir.) (footnote omitted), *cert. denied,* 510 U.S. 1017, 114 S.Ct. 615, 126 L.Ed.2d 579 (1993). The rule is the same in the Tenth Circuit. To obtain disclosure of a confidential informant referred to in a search warrant affidavit, "the defendant must make a substantial showing that the affiants knowingly made false statements, or made statements with reckless disregard for the truth." *United States v. Hernandez,* 829 F.2d 988, 992 (10th Cir.1987), *cert. denied,* 485 U.S. 1013, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988); *see United States v. Bloomgren,* 814 F.2d 580, 583–84 (10th Cir.1987). The defendant here fails to clear this hurdle of a substantial preliminary showing.

In this case the CI was not a percipient or transactional witness to the crime charged. The CI had no role in the actual search of the defendant's residence. Whatever the CI saw or heard is does not appear to be the basis on which the crimes are charged. "In short, the informant's role ended after providing the police with relevant information that served as the foundation for obtaining the search warrant." *United States v. Bender,* 5 F.3d 267, 270 (7th Cir.1993). The CI here was a mere tipster. The defendant has not shown that the balance of factors favor disclosure of the CI's identity.

Motion for Disclosure [of Rule 404(b) evidence] by Government (Dk.55); Motion for Disclosure of Prior or Subsequent Bad Acts or Criminal Conduct (Dk.58).

Both defendants seek an order compelling the government to disclose any evidence it intends to offer pursuant to Fed. R.Evid. 404(b) (prior bad acts). Lindberg also seeks an order compelling the government to disclose any evidence it intends to offer under Fed.R.Evid. 609 (impeachment by evidence of prior conviction).

In its response, the government agrees to provide the information sought by the defendants, although at present it apparently does not know of any prior bad acts or prior convictions it may attempt to offer at trial of this matter. The government agrees to provide notice to the defendants if it obtains such information.

In light of the government's response, the defendant's motions for disclosure of evidence which the government may attempt to offer at trial under Rules 404(b) and 609 is denied as moot.

**Motion for Disclosure of Promises or Agreements (Dk.60).**

Lindberg seeks an order compelling the government to produce and provide the existence, substance and manner or execution of any and all promises or any other agreements that have been made in connection with this case. In its response, the government agrees to voluntarily provide both defendants with full disclosure of any promises of immunity or leniency made in exchange for testimony.

The defendant's motion for disclosure of promises or agreements is denied as moot.

**Motion for Production of Impeachment Evidence Regarding Government Witnesses (Dk.59).**

Lindberg seeks an order directing the government to provide the defense with "all impeachable convictions of witnesses" to be called at trial, including certified copies of such convictions. In its response, the government agrees to voluntarily pro-

vide the information requested by the defendant.

The defendant's motion for production of impeachment evidence regarding government witnesses is denied as moot.

**Motion to Suppress Testimony (Dk.57).**

Relying on the Tenth Circuit's opinion in *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998) (prosecuting attorney violated 18 U.S.C. § 201(c)(2) when he offered leniency to a co-defendant in exchange for truthful testimony), *vacated pending rehearing en banc,* 144 F.3d at 1361 (10th Cir.1998), *on rehearing en banc, United States v. Singleton,* 165 F.3d 1297 (10th Cir.1999), *cert. denied,* ── U.S. ──, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999), the defendant seeks an order precluding the government from introducing the testimony of Kimberly Lister at trial as a violation of 18 U.S.C. § 201(c)(2). According to the defendant, the government has promised Ms. Lister leniency or immunity in exchange for her agreement to testify in this case.

Since the time the defendant filed this motion, the Tenth Circuit, sitting en banc, has expressly rejected the argument now advanced by Lindberg. *See Singleton,* 165 F.3d at 1298 ("We now hold 18 U.S.C. § 201(c)(2) does not apply to the United States or an Assistant United States Attorney functioning within the officer scope of the office."); *United States v. Culp,* 188 F.3d 519, 1999 WL 590744 (10th Cir.1999). Bound to follow Tenth Circuit precedent, the court denies Lindberg's motion to suppress testimony.

**New Dates**

Having consulted with counsel for the defendants and the government, these matters are now set at the following dates and times:

Pretrial Motions Hearing: October 5, 1999, at 1:30 p.m.

Pretrial Status Conference: October 13, 1999, at 1:30 p.m.

Trial: October 27, 1999, at 1:30 p.m.

IT IS THEREFORE ORDERED that D'Armond's Motion to Dissmiss (Sic) for Lack of Jurisdiction (Dk.71) (pro se motion) is denied.

IT IS FURTHER ORDERED that D'Armond's Motion to Disclose Identity of Confidential Informant (Dk.18) is denied.

IT IS FURTHER ORDERED that D'Armond's Motion to Compel Discovery Regarding Informant(s) (Dk.56) is denied.

IT IS FURTHER ORDERED that D'Armond's Motion for Disclosure [of Rule 404(b) evidence] by Government (Dk.55) is denied as moot.

IT IS FURTHER ORDERED that Lindberg's Motion to Disclose Identity of Confidential Informant (Dk.63) is denied.

IT IS FURTHER ORDERED that Lindberg's Motion for Disclosure of Promises or Agreements (Dk.60) is denied as moot.

IT IS FURTHER ORDERED that Lindberg's Motion for Production of Impeachment Evidence Regarding Government Witnesses (Dk.59) is denied as moot.

IT IS FURTHER ORDERED that Lindberg's Motion for Disclosure of Prior or Subsequent Bad Acts or Criminal Conduct (Dk.58) is denied as moot.

IT IS FURTHER ORDERED that Lindberg's Motion to Suppress Testimony (Dk.57) is denied.

IT IS FURTHER ORDERED that the following motions (and accompanying briefs) remain under advisement:

Motion to Suppress (Dk.16); Brief in Support (Dk.17); Supplemental Brief in Support (Dk.29); Motion to Suppress Evidence (Dk.61); Memorandum in Support of Motion to Suppress (Dk.62).