UNITED STATES of America,
Plaintiff-Appellee,

v.

Roman G. WENINGER,
Defendant-Appellant.

No. 79–1161.

United States Court of Appeals,
Tenth Circuit.

Argued May 7, 1980.

Decided June 26, 1980.

Rehearing Denied July 22, 1980.

Lee D. Foreman of Haddon, Morgan & Foreman, Denver, Colo., for defendant-appellant.

William C. Danks, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty., Denver, Colo., with him, on brief), for plaintiff-appellee.

Before BARRETT, PECK * and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Weninger was convicted of a misdemeanor for failing to file federal income tax returns for the years 1973 and 1974 in violation of 26 U.S.C. § 7203. At trial, Weninger was permitted to appear *pro se* to conduct his defense. Weninger appeals to this court through an attorney, contending primarily that (1) his trial was conducted in violation of the Sixth Amendment because he was denied both the right to counsel and

* Of the United States Court of Appeals, Sixth Circuit, sitting by designation.

the right of confrontation, and (2) the trial court erred in denying his motion for a new trial in light of new evidence uncovered after the verdict. We affirm his conviction.

## I.

### Sixth Amendment Rights

Weninger is a self-made millionaire. The evidence at trial documented that during 1973 and 1974, Weninger's income exceeded $180,000. Weninger told Dr. Currier, a court appointed psychiatrist who prepared a presentencing report, that he did not file tax returns as a deliberate protest against the condition of our country. In addition, Dr. Currier's report states that Weninger elected not to have an attorney represent him because "if he asked for help, people might think he was not sincere in his effort." Rec., supp. vol. I, at 8.

■ The Sixth Amendment provides a defendant with the constitutional right to defend against a criminal charge *pro se. Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, the assertion of this right is conditioned on a knowing and intelligent waiver of the constitutional right to the assistance of counsel. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). To ascertain whether Weninger knowingly and intelligently waived his right to counsel, we must consider "the total circumstances of the individual case including background, experience and the conduct of the accused person." *United States v. Warledo*, 557 F.2d 721, 727 (10th Cir. 1977) (citing *Johnson*, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. 1461).

It is the duty of the trial judge to initially determine whether an intelligent and competent waiver of counsel has been made by the accused. *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

"To discharge this duty properly in light of the strong presumption against waiver

of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

*Id.* at 723–24, 68 S.Ct. at 323, 92 L.Ed. 309. We believe the evidence shows that Judge Winner discharged this duty in the present case.

When Weninger appeared to defend himself at trial, Judge Winner recognized that Weninger's "protest" defense was without merit and asked him, "if I give you time, will you hire a lawyer, Mr. Weninger?" Rec., vol. III, at 15. Weninger answered in the affirmative but stated that he would need "anything from 100 to 120 days" to retain counsel. *Id.* The judge denied this request as unreasonable and proceeded with the trial.

Shortly thereafter, the judge excused the jury and implored Weninger to hire counsel:

"THE COURT: Mr. Weninger, I plead with you to get a lawyer. I just plead with you to get one. You need a lawyer. You and your wife [1] are facing the strong probability of a term in prison. You should be represented by a lawyer. Obviously, you can afford one.

---

1. Weninger is the sole petitioner on appeal because the charges were dismissed against his wife during the trial.

" . . . I have had experience with some of the civil cases you have filed[2] and I know what you think of the legal profession; you don't like lawyers. But you both need a lawyer.

"I will tell you here and now that, in my judgment, there are motions which should have been filed directed to this Information.[3] I will tell you here and now that, in my judgment, you and your wife are not properly charged. I will tell you here and now that, in my judgment, a good lawyer would file motions which would require either the filing of a new Information or a substantial amendment to this Information. I will tell you here and now that, in my judgment, this Information is defective. I would not expect anyone untrained in the law to observe the defect. I would think that a competent lawyer would.

\* \* \* \* .\* \*

"You need a lawyer. You need a lawyer badly. Both you and your wife may well spend up to two years in prison because you stubbornly refuse to go to a lawyer.

"Now, during this recess, I plead with you that you think about getting a lawyer if not for your own sake at least for the sake of your wife.

"So I am going to take a recess and I am going to ask that during this recess you think about getting a lawyer. In my judgment, a competent lawyer in one hour, and certainly in not less than four, can review this Information and file motions direct to it. . . . I ask you, please think about this. You are into something here that I don't care how much you disapprove of our system of government, I don't care how much you think there's no lawful money except gold coin, I don't care how much you think federal reserve notes are not legal tender, and I have never understood, since you feel so strongly that they are no good, why don't you just go ahead and pay your taxes with them. . . . But I just beg of you, get a lawyer. You need one.

"Will you think about it?

"MR. WENINGER: Yes, Your Honor."

Rec., vol. III, at 31–33. After the recess, the following colloquy took place:

"THE COURT: All right, Mr. Weninger, what is your decision?

"MR. WENINGER: Well, Your Honor, I feel like I should go along with your suggestion, but I'm not stalling for additional time. *The thing I'm asking for a lot of time for is so that I can find the attorney that is concerned about the basic principles of our country.*

"THE COURT: No, I am not going to give you that, Mr. Weninger. I know your views, but the members of the Bar, by and large, don't share your views as to our government. If you will go get a lawyer to represent you in this lawsuit and not to appear and try to make a political crusade out of this, I will go along with it, but I will not go along with it—I will give you until this afternoon to get somebody. Now, you can get a lawyer to at least come over here and tell me what he is going to do or I will give you until tomorrow morning, but tomorrow morning you are either going to have a lawyer here who will be prepared to go forward in whatever fashion he deems appropriate or we are going ahead this way.

\* \* \* \* \* \*

"I am more than willing, if the lawyer you select wishes, to participate in a matter to be conducted in open court in the presence of everybody this afternoon to explain to him where I think there is a very, very serious defect in this Information, I will do that. . . .

---

2. Weninger had previously sued the Internal Revenue Service eight times, some of which cases were before Judge Winner. In all, he had sued various governmental departments and officials in approximately thirty-five cases.

3. Subsequently, the United States moved to amend the Information, and Judge Winner permitted the amendment.

"But I cannot emphasize to you enough that you and your wife are in serious trouble. You are charged with a crime, both of you. Whether a jury will convict you or whether a jury will not convict you remains to be seen. But a man of your intelligence and a woman of Mrs. Weninger's intelligence should not want to go to trial in a criminal case without a lawyer. It is all right for you to go in a civil case, but a criminal case, if you lose it, I am going to impose sentence on you in exactly the same way I would impose sentence on somebody who was represented by a lawyer. You are not going to get any lighter sentence because of the fact you don't like lawyers, you are not going to get any lighter sentence because of the fact you think the income tax law is—I don't know what you think it is. It isn't exactly unconstitutional because you say the Sixteenth Amendment was never legally adopted, and the United States Supreme Court and certain other courts have disagreed with you on that despite the fact that they had a border dispute in Ohio when the President and the Secretary of State came from there.

"I say to you, get a lawyer. Now, a lawyer may be able to file motions or not, as he deems appropriate. It may be that a good lawyer may decide that it would be better strategy to continue this trial on this Information and to raise the question post-trial. It may be, and I don't know, that if that were done, you might have a double-jeopardy defense that would be fascinating. I don't know and I am expressing no opinion on that. But I am telling you that this Information, as framed, raises some extremely difficult legal problems that neither you nor your wife are adequately equipped to handle. You need a lawyer, you need a good lawyer, and I'm going to ask the jury to come back in and excuse them until tomorrow morning and I am going to explain to them that between now and tomorrow morning you are going to make a decision as to whether you do or do not want a lawyer and I'm going to tell them that I have urged you to get one."

*Id.* at 34–37 (emphasis added). The judge then apologized to the jury for the delay, explaining that he could not "in good conscience, permit this case to go forward today without the defendants giving further consideration to the wisdom, or lack thereof, of proceeding in this trial without counsel." *Id.* at 39.

The next day, Weninger stated that he had engaged counsel but the lawyer had not yet appeared. Although the judge allowed the trial to proceed, he implied that a motion for a mistrial might be proper. When the lawyer arrived, the judge again called a recess. For reasons that do not appear in the record, however, this lawyer was not retained and Weninger continued to represent himself.

■ The record indicates that Weninger had no intention of hiring a lawyer unless the lawyer agreed with his views about the invalidity of the tax laws. However, the right to assistance of counsel does not imply the absolute right to counsel of one's choice. *United States v. Dolan*, 570 F.2d 1177, 1182–83 (3d Cir. 1978). A defendant's right to obtain counsel of his choice must be balanced against the need for the efficient and effective administration of criminal justice. *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1214 (3d Cir. 1969). And *see Kates v. Nelson*, 435 F.2d 1085, 1088–89 (9th Cir. 1970) (quoting *United States ex rel. Davis v. McMann*, 386 F.2d 611, 618–19 (2d Cir. 1967)), where the court said:

" '[W]e have recognized a right of a defendant to proceed without counsel and to refuse the representation of . . . counsel. * * * [H]e may not use this right to play a 'cat and mouse' game with the court * * * or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel.' "

■ Weninger first indicated on July 3, 1978, in an application for additional time to file motions, that he intended to retain counsel. He had ample time to do so before

the start of his trial on September 11, 1978. During trial, the judge repeatedly tried to persuade Weninger to secure representation. The judge even offered to explain to the lawyer the defects he perceived in the Information. Nevertheless, a lawyer was not retained. The record and surrounding circumstances sufficiently demonstrate that Weninger had a reasonable opportunity to retain counsel. *See United States v. Gates,* 557 F.2d 1086 (5th Cir. 1977).

The record as a whole indicates that, although Weninger was made "aware of the dangers and disadvantages of self-representation," *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d 562, he strategically chose to appear *pro se.* However, after the jury refused to uphold his patriotic protest against the federal income tax, Weninger retained counsel to contend on appeal that the conduct of his trial was constitutionally impermissible. We refuse to permit this type of game to be played with the courts. We hold that Weninger's stubborn failure to hire an attorney constituted a knowing and intelligent waiver of the right to assistance of counsel.

■ Weninger also contends that his inability to cross-examine witnesses or object to exhibits violated his Sixth Amendment right of confrontation. We point out that the trial court, sympathetic to the disadvantages of self-representation, assisted the defendant at times during the trial by objecting to government questions and exhibits. In any event, the Court noted in *Faretta* that a defendant who exercises his right to represent himself cannot be heard to complain on appeal that his own representation was ineffective. 422 U.S. at 835 n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d 562 and *see United States v. Rowe,* 565 F.2d 635 (10th Cir. 1977). Since we hold that Weninger was properly permitted to appear *pro se,* his lack of legal expertise cannot be the basis for a reversal.

## II.

### Motion for New Trial

■ Finally, Weninger argues that new evidence was uncovered after the verdict which required the granting of his motion for a new trial because it established that he did not have the requisite criminal intent to violate 26 U.S.C. § 7203. The standard for granting such a motion based on new evidence is extremely stringent. One criterion is that the evidence "is material and of such a character that on a new trial such evidence would probably produce a different result." *United States v. Maestas,* 523 F.2d 316, 320 (10th Cir. 1975).

The source of the new evidence here was Dr. Currier who stated in his presentence report that, in his opinion as a psychiatrist, "there was no criminal intent" when Weninger failed to file his income tax return. Rec., supp. vol. I, at 11. His judgment appears to have been based on the fact that Weninger was motivated by a good faith belief that nonpayment of his taxes would somehow alert the country about problems in the United States' economy.

■ However, the "willfulness" requirement of 26 U.S.C. § 7203 has been defined as "a voluntary, intentional violation of a known legal duty." *United States v. Bishop,* 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973). Thus, no matter how earnestly a defendant disagrees with the income tax or believes it unconstitutional, he will be guilty of violating section 7203 if he deliberately fails to file. *United States v. Ware,* 608 F.2d 400 (10th Cir. 1979). Good motive is irrelevant if the defendant knows of his duty to file. *United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976).

In this case, an agent of the Internal Revenue Service testified that Weninger had filed income tax returns for the years 1969–1972. Weninger conceded that he failed to file for the years 1973 and 1974 as a protest. He told Dr. Currier that "he did not file his tax returns deliberately in order to make an issue that he hoped would stir people to some positive action." Rec., supp. vol. I, at 7. When Dr. Currier asked him if he believed he had broken the law, "[h]e answered in the affirmative but said he felt there was no criminal intent because he was

doing it for the positive purpose of raising an alarm about the danger in which the United States economy found itself." *Id.* at 8. The record amply demonstrates that Weninger disregarded a duty known to him and, therefore, acted with "willfulness" as required by section 7203. Since the opinion of Dr. Currier as to Weninger's lack of criminal intent would not affect the verdict, the motion for a new trial was properly denied.

We find Weninger's remaining contentions without merit.

AFFIRMED.