**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 10 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GREGG FRANCIS BRAUN,

      Petitioner-Appellant,

v.

RON WARD, Warden; ATTORNEY
GENERAL OF THE STATE OF
OKLAHOMA,

      Respondents-Appellees.

No. 98-7101

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. CIV-97-313-B)**

---

Benjamin Lee McCullar, Law Offices of Randy C. Parsons, Shawnee, Oklahoma,
for Petitioner-Appellant.

Sandra D. Howard, Assistant Attorney General of Oklahoma (W.A. Drew
Edmonson, Attorney General of Oklahoma, with her on the brief), for
Respondent-Appellee.

---

Before **BALDOCK**, **EBEL** and **LUCERO**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

    In Oklahoma state court, Gregg Francis Braun pled nolo contendere to

murder in the first degree, two counts of shooting with intent to kill, and two

counts of robbery with firearms. The court sentenced him to death for the murder, life imprisonment on each shooting count, and 25 years on each robbery count. After direct and post-conviction appeals in state court, Braun sought habeas relief in federal district court under 28 U.S.C. § 2254. The district court denied relief and denied a certificate of appealability ("COA"). We granted a COA on (1) whether Braun's waiver of assistance of counsel at the motion to withdraw plea hearing was constitutionally infirm; and (2) whether Braun's plea of nolo contendere was voluntary rather than the result of ineffective assistance of counsel. For the reasons set forth below, we affirm the district court's denial of habeas relief.

**BACKGROUND**

On July 21, 1989, Braun robbed a flower shop in Ardmore, Oklahoma, forced three women in the shop to lie down in the stockroom, and shot each in the back of the head with a .25 caliber pistol. One of the victims died as a result. Braun was arrested shortly thereafter in New Mexico, and while being transported to the county jail, he voluntarily stated that "he shot some women in a flower shop," and that, "[i]t wasn't as good as shooting craps in Vegas, but it was all right."

On August 17, 1993, Braun pled nolo contendere to first degree murder (Count I); shooting with intent to kill (Counts II-III); and robbery with firearms (Counts IV-V). At the sentencing hearing, conducted on August 19, 20, and 23, 1993, the government introduced evidence that the Ardmore murder was part of a killing spree involving four other murder victims, clerks at various stores in Kansas, Texas, and New Mexico. Braun introduced evidence regarding his personality disorders, though both of Braun's experts indicated that he was not legally insane during the homicides. The trial court then found the existence of three aggravating circumstances: (1) Braun knowingly created a great risk of death to more than one person; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (3) a probability existed that Braun would constitute a continuing threat to society. The trial court sentenced Braun to death for the murder, life imprisonment on each shooting count, and twenty-five years on each robbery count.

On August 27, 1993, Braun moved to withdraw the nolo contendere plea and have new counsel appointed to represent him. On September 21, 1993, the trial court denied the motion after conducting a hearing at which Braun represented himself.

Braun directly appealed his conviction and sentence, both of which the Oklahoma Court of Criminal Appeals ("OCCA") affirmed. See Braun v.

Oklahoma, 909 P.2d 783 (Okla. Crim. App. 1995) ("Braun I").  Subsequently, the OCCA denied his application for post-conviction relief and request for an evidentiary hearing and discovery.  See Braun v. Oklahoma, 937 P.2d 505 (Okla. Crim. App. 1997) ("Braun II").

On October 24, 1997, Braun filed a petition for writ of habeas corpus in the district court under 28 U.S.C. § 2254.  The complaint stated ten claims, all of which the district court denied under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, § 104 (1996) ("AEDPA" or "Act").  The court later denied COA on all issues.  We granted COA on whether Braun's waiver of counsel at the motion to withdraw plea hearing was valid, and whether his plea of nolo contendere was involuntary as a result of ineffective assistance of counsel.

**DISCUSSION**

AEDPA applies to Braun's case because he filed his § 2254 petition after April 24, 1996, the effective date of the Act.  See Hooks v. Ward, No. 98-6196, 1999 WL 502608, *4 (10th Cir. July 16, 1999). AEDPA provides for habeas relief if a claim adjudicated on the merits in state court proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

- 4 -

States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## I. Waiver of Counsel at Hearing to Withdraw Nolo Contendere Plea

Braun argues that the OCCA ruled contrary to clearly established federal law as determined by the Supreme Court in finding that Braun's waiver of counsel at the motion to withdraw plea hearing was voluntary, knowing, and intelligent. See Braun I, 909 P.2d at 787-89. We do not believe this claim warrants relief under AEDPA.

To begin, we highlight the relevant parts of the hearing. When Braun entered his plea of nolo contendere, he was represented by James Rowan of the Oklahoma Indigent Defense System (OIDS) and Phil Hurst, local counsel. Shortly after sentencing, Rowan filed on Braun's behalf a motion to withdraw the plea of nolo contendere, and a hearing was set. Due to a potential conflict of interest,[1] OIDS arranged for another lawyer, a Mr. Payne, to represent Braun at the hearing. However, Payne inexplicably failed to contact Braun and did not

---

[1]At the hearing, Braun called Rowan as a witness.

show up at the hearing. Rowan was present at the hearing, but not in a representative capacity.

Having discussed the matter beforehand with Rowan, Braun advised the court that he wanted to proceed pro se. The court confirmed Braun's wishes by asking: "Are you telling me you want to represent yourself at this hearing?" Braun replied:

> Well, at this hearing because the lawyer that was appointed to represent me—I haven't heard from him. I haven't met him. He didn't show up today, and I don't want to be brought back here again and go through all this again, so I'm ready to represent myself at this hearing today.

When the judge expressed his understanding that OIDS had appointed Payne to represent Braun at this hearing, Braun replied: ". . . I never heard from him. So today when I showed up, I assumed he would be here; and he's not. So I'm—I don't even want to deal with the guy, and I'm prepared to represent myself at this hearing."

The trial court then informed Braun of his options:

> If you want, I will entertain your request to reset the hearing whenever this lawyer, whether it's Mr. Payne or somebody else, can be here. If you want to represent yourself as I told you earlier, I cannot deny you that as long as I am convinced that you know what you're doing, and some prosecution person didn't give—didn't force you to do it.

Braun replied: "Yes.  I'll represent myself, and I've already discussed—I know what's going on with this hearing and what it's about, and I'm prepared to represent myself."

The trial court asked Braun a series of questions to ascertain that his waiver of counsel was knowing and voluntary: (1) whether any prosecutor or police officer had pressured Braun; (2) whether Braun thought proceeding pro se was the best way to proceed; (3) whether Braun understood that the trial court would delay the hearing until Braun could get another attorney; (4) and whether Braun would prefer representing himself instead of waiting.  Braun indicated that no one had pressured him, that he understood the hearing could be delayed for him to get another attorney, and that he would rather represent himself than wait.

The trial court then emphasized the seriousness of the situation because Braun's life was at stake.  To make certain Braun wanted to represent himself and that his decision was valid, the trial court stated:

> [I]f there is any question in your mind or there is something else about these circumstances that I need to know about, this is the time to tell me. . . .  Is there some other circumstance that I don't know about that's causing you to tell me you're going to represent yourself?

Braun replied:

> Well, in a way, but then again, uh, I'm really tired of being moved around, you know, here in this jail, being stuck in this holding cell and things like this for a day or two; and to come in here, and some lawyer who I don't even know isn't here.  And then they say, "Well,

we'll put it off again." And, you know, they'll take me back to prison, and they'll drag me up here in a few more days, and blah, blah, blah.

And I just want to do it now, and I understand what's going on. I know what this is about, and I've discussed it with [Rowan] prior to today; and I'm prepared to do it today regardless of the outcome or the consequences because basically, I know I'm here to tell my side of the story why I plead nolo contendere, and I don't need a lawyer to do that.

The trial court then warned Braun that if he took the stand, the prosecution would be able to cross-examine him, and that if the prosecution calls witnesses, Braun may have to cross-examine them, all without counsel to assist him. After Braun indicated he understood, the court accepted his waiver of the right to counsel.

In Faretta v. California, 422 U.S. 806 (1975), the Supreme Court held that a defendant has a right to self-representation, but to invoke that right the defendant must waive his right to counsel "voluntarily" and "knowingly and intelligently." Id. at 835; see also United States v. Silkwood, 893 F.2d 245, 248 (10th Cir. 1989) ("the Supreme Court held in Faretta v. California that a criminal defendant has the right to appear pro se if he voluntarily, knowingly, and intelligently waives his Sixth Amendment right to counsel") (internal citations omitted). We review de novo whether a waiver of counsel is voluntary, knowing and intelligent. See United States v. Taylor, No. 98-6042, 1999 WL 476024, at *4 (10th Cir. July 9, 1999).

Braun argues that his waiver of counsel was involuntary under <u>Silkwood</u> because it was a choice between no counsel and ineffective counsel. In <u>Silkwood</u>, interpreting <u>Faretta</u>, we stated that, "[f]or the waiver to be voluntary, the trial court must inquire into the reasons for the defendant's dissatisfaction with his counsel to ensure that the defendant is not exercising a choice between incompetent or unprepared counsel and appearing *pro se*." <u>Silkwood</u>, 893 F.2d at 248.

We are not persuaded by Braun's argument. Here, Braun did not have to choose between incompetent or unprepared counsel and appearing pro se. Rather, as our review of the hearing shows, Braun had a third choice open to him: the trial court offered multiple times to reschedule the hearing to ensure that Braun could have new counsel present. Braun essentially refused this option because he was "really tired of being moved around," and "being stuck in this holding cell and things like this for a day or two." However, Braun does not argue, and we do not find, that the third alternative of waiting a few days for counsel was unconstitutional. <u>See</u> <u>United States v. Padilla</u>, 819 F.2d 952, 955 (10th Cir. 1987) ("When a defendant is given a clear choice between waiver of counsel and another course of action, . . . the choice is voluntary as long as it is not constitutionally offensive."); <u>cf.</u> <u>United States v. Conrad</u>, 598 F.2d 506, 510 (9th Cir. 1979) (finding defendant knowingly and voluntarily waived right to counsel

at motion to withdraw plea hearing and sentencing where "he knew he could have new appointed counsel," but "[i]nstead he chose to represent himself"). The Hobson's choice presented in Silkwood is absent here. Braun makes no showing that, if he had accepted the trial court's offer of a continuance, that replacement counsel would have failed to appear at the rescheduled hearing or that such replacement counsel would have performed in a constitutionally deficient manner. We decline to make any such assumptions. Thus, we believe the OCCA's determination that Braun's waiver was voluntary is in accord with clearly established federal law as determined by the Supreme Court.

Braun also argues that his waiver was not knowing and intelligent. He states that the trial court's inquiry was "clearly inconsistent with Faretta" because the court "failed to fully explain the dangers of self-representation at that stage of the proceedings, except for cross-examination." We disagree.

The Sixth Amendment inquiry into waiver should be tailored to the particular stage of the criminal proceeding. The Supreme Court has adopted a

> pragmatic approach to the waiver question—asking what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage—to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized.

Patterson v. Illinois, 487 U.S. 285, 298 (1988). Thus, the necessary warnings and procedures will vary according to the stage of the proceedings. As the Court

- 10 -

illustrated, "[a]t one end of the spectrum, we have concluded that there is no

Sixth Amendment right to counsel whatsoever at a postindictment photographic

display identification, because this procedure is not one at which the accused

requires aid in coping with legal problems or assistance in meeting his adversary."

Id. (internal quotation omitted).  In contrast, "[a]t the other extreme, recognizing

the enormous importance and role that an attorney plays at a criminal trial, we

have imposed the most rigorous restrictions on the information that must be

conveyed to a defendant, and the procedures that must be observed, before

permitting him to waive his right to counsel at trial."  Id. (citing inter alia,

Faretta, 422 U.S. at 835-36).  In between these extreme cases, the Court has

"defined the scope of the right to counsel by a pragmatic assessment of the

usefulness of counsel to the accused at the particular proceeding, and the dangers

to the accused of proceeding without counsel."  Id.  If a defendant "is made aware

of these basic facts," then his waiver of the right to counsel "is 'knowing.'"  Id.

In this case, Braun waived counsel at the evidentiary hearing on his motion

to withdraw plea.  The issue presented at the hearing was discrete—whether

Braun's plea was involuntary.  See Motion to Withdraw Nolo Contendere Plea,

filed Aug. 27, 1993.  The proceeding would involve examining and cross-

examining witnesses and arguing whether the motion should be granted.  The role

of counsel at such a hearing, therefore, would be more limited than the role of

- 11 -

counsel at trial.  Cf. Patterson, 487 U.S. at 294 n.6 (addressing the attorney's limited role during postindictment questioning); United States v. Salemo, 61 F.3d 214, 219 (3d Cir. 1995) ("[T]he inquiry at sentencing need only be tailored to that proceeding and the consequences that may flow from it.  Therefore, it need not be as exhaustive and searching as a similar inquiry before the conclusion of trial."); United States v. Day, 998 F.2d 622, 626 (8th Cir. 1993) (same).

The trial court informed Braun of the dangers of self-representation at the motion to withdraw plea hearing by warning Braun that he would be cross-examined if he took the stand and that he might have to cross-examine the state's witnesses. The trial court also conveyed to Braun that his life was on the line. Braun made it clear that he understood the objective of the hearing, and importantly, Braun testified that he had consulted with counsel prior to the hearing.  Thus, he had a clear idea of the strategy that he wished to pursue at the hearing.[2]  Under the circumstances, we believe Braun's waiver of counsel was knowing and intelligent.[3]

_____

[2]We also note that Braun had had extensive experience with the criminal justice system including trials arising out of his murders in New Mexico and Kansas.

[3]Although Braun points out that the trial court "failed to advise Mr. Braun that his appeal would be circumscribed by the matters raised in his application to withdraw his guilty plea," Braun fails to establish how this additional advice would have changed the issues raised at the hearing.  As the district court noted, Braun's attorney, before he withdrew, filed the application to withdraw plea

(continued...)

- 12 -

The cases on which Braun relies, Faretta, Silkwood, and United States v. Willie, 941 F.2d 1384 (10th Cir. 1991), are inapposite. Faretta and Willie both involve waivers of counsel for trial rather than a post-conviction, post-sentencing hearing on a motion to withdraw plea. And, in Willie we concluded that the defendant had intelligently, knowingly and voluntarily waived his right to counsel even though the court did not fully discuss all of the risks involved in proceeding to trial without counsel. See Willie, 941 F.2d at 1388-89. As for Silkwood, which involved a waiver of counsel for sentencing, the case is distinguishable for several reasons. There, the trial court initially granted "without inquiry or advisement" a defendant's post-trial request to proceed pro se. Silkwood, 893 F.2d at 247. At two subsequent hearings, including a sentencing enhancement hearing, the court asked the defendant whether he wanted a new appointed attorney, provided only "general statements about the seriousness of sentence enhancement," and grossly misinformed the defendant about the maximum enhancement he could receive (the court mistakenly quoted the figure for a minimum enhancement). See id. at 248 & n.4. In contrast, the trial court here

[3](...continued)
before the hearing, and thus the issues for appeal were already circumscribed by those raised in the application with advice of counsel. Even if the trial court had informed Braun at the hearing that issues on appeal would be circumscribed by those raised in the application, the issues raised in the application had already been set with the assistance of counsel.

- 13 -

gave Braun specific warnings that, as part of the evidentiary hearing, Braun would have to conduct cross-examination and be cross-examined without the assistance of an attorney, and Braun was specifically warned about the seriousness of the hearing. Moreover, unlike Silkwood, the trial court in Braun's case did not provide any misinformation about the potential consequences of the hearing.

We hold, in short, that Braun voluntarily, knowingly, and intelligently waived his right to counsel at the motion to withdraw plea hearing. The OCCA's similar conclusion was neither "contrary to, [n]or involved unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Consequently, we affirm the district court's denial of habeas relief on this claim.[4]

---

[4]With little discussion, Braun also contends that he was denied a full and fair hearing on this claim in the Oklahoma courts and the district court, and requests remand for an evidentiary hearing. Again with little discussion, Braun argues that the OCCA failed to follow applicable state law that forbids defendants from proceeding pro se without sufficient warnings about the dangers of self-representation, thereby resulting in a violation of federal due process. We reject these arguments as without merit.

## II. Plea of Nolo Contendere

Challenging the OCCA's decision on direct appeal, see Braun I, 909 P.2d at 789-96, Braun claims that his blind plea of nolo contendere was involuntary because it was "induced by the ineffective assistance of trial counsel." Braun argues that his attorneys were ineffective because they earlier had failed to file properly a motion for change of venue.[5] Braun also claims that his attorneys misled him into entering his plea when they related to him an alleged conversation with the trial judge indicating that the judge was surprised the prosecutors were seeking the death penalty in Oklahoma given that Braun already was subject to 126 years in jail in New Mexico and Kansas before he would be eligible for parole, and when they advised him that he had a better shot in front of the judge than a jury of getting life without parole. According to Braun, "[b]ut for counsel's failure to pursue a change of venue and their assurances that the sentencing judge would give him a sentence less than death, Mr. Braun would

---

[5]As Braun testified at the motion to withdraw plea hearing, he was adamant about seeking a change of venue, partly because of his prior experience in New Mexico where he had received a change of venue and a life sentence from a jury rather than the death penalty; and partly because Ardmore (Carter County), where the murder was committed, was a small community and Braun feared pre-trial publicity would prejudice him. Rowan assured Braun that Hurst (local counsel) would file the change of venue and collect "whatever evidence" was needed for that purpose. However, by Rowan's admission at the motion to withdraw plea hearing, the attorneys "both procrastinated" and did not come up with three affidavits as required by statute for a motion to change venue. Thus, the district court dismissed it because it was not accompanied by the required affidavits.

- 15 -

have maintained his plea of not guilty and would have insisted on going to trial." Thus, Braun argues that he received ineffective assistance of counsel, that counsel gave misleading advice regarding the plea, and that he was prejudiced thereby. We disagree.

"The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging his guilty plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel." Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998).[6] "First, we must ask whether 'counsel's representation fell below an objective standard of reasonableness.'" Id. (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985)). If this prong is met, then the petitioner must show that his counsel's performance prejudiced him by demonstrating (1) that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,'" Id. (quoting Hill, 474 U.S. at 59) and (2) that "had he rejected the State's plea bargain, the outcome of the proceedings 'likely would have changed.'" Id. at 1256-57 (quoting Hill, 474 U.S. at 59). In this case, that requires Braun to establish a reasonable probability that he would have pled not guilty and that a jury either would not have convicted him of first degree murder or would not have

---

[6]The standard for a guilty plea is appropriate since the legal effect of a nolo contendere plea in Oklahoma is the same as that of a guilty plea. See Okla. Stat. Ann. tit. 22, § 513.

- 16 -

imposed the death penalty. "Whether a plea is voluntary is a question of federal law subject to de novo review." Miles v. Dorsey, 61 F.3d 1459, 1465 (10th Cir. 1995) (quotations omitted), cert. denied, 516 U.S. 1062 (1996).

With regard to Braun's claim that his plea was involuntary because counsel was ineffective for failing to file properly the change of venue motion, the OCCA concluded that Braun had failed to establish prejudice both because a change of venue motion, even if properly presented, "would, in all probability, not have been successful" (thus leaving Braun in exactly the same position in deciding how to plead as if his attorneys had not been deficient in pursuing a change of venue motion) and, further because even if a change of venue had been granted, Braun failed to show any reasonable probability that the outcome of the death penalty would have been any different in a different venue, given the "overwhelming evidence against him," including evidence on the aggravating favors. Braun I, 909 P.2d at 794, 796. The record fully supports the OCCA's findings in both regards and the OCCA correctly applied federal law as determined by the United States Supreme Court in its analysis. Accordingly, federal habeas relief is not warranted under AEDPA.

With regard to Braun's claim that counsel improperly influenced him into pleading nolo contendere by assuring him that the judge would give him a sentence less than death, we recognize that "[a] plea may be involuntary when an

- 17 -

attorney materially misinforms the defendant of the consequences of the plea or the court's probable disposition." United States v. Rhodes, 913 F.2d 839, 843 (10th Cir. 1990) (internal quotation marks and citations omitted). However, we agree with the OCCA that Braun's claim is not supported by the record. See Braun I, 909 P.2d at 794-96. The OCCA found that Braun "relied on his attorney's knowledge of the law, and their instincts," rather than any misleading guarantees, in entering his plea. Id. at 795. Braun does not adequately rebut this determination under the standards imposed by AEDPA. In fact, the record makes it abundantly clear that Braun knew he was taking his chances by pleading nolo contendere and facing the judge, and that his attorneys did not provide him with any guarantees to the contrary, nor did they relate any such guarantees from the judge.

At the motion to withdraw plea hearing, Braun testified that, after his attorneys failed to get a change of venue, they counseled him to plead nolo contendere and to go before the judge for sentencing rather than face a jury for both trial and sentencing because a jury would give him death "for sure." Braun further testified that Hurst later told Braun that he had spoken with the trial judge on the phone. According to Braun, Hurst told him that the judge had said he could not understand why the prosecutor had not pleaded out the case, "because of the economics of sentencing someone to death and going through the appellate

process, the cost of incarcerating someone here in the Oklahoma State Penitentiary, etcetera -- when he told me that, then I started to listen to their arguments more, or not really arguments, but to their philosophy, at least, of pleading no contest." Braun said, even after hearing of that conversation, that he told his attorneys, "there's gonna be a lot of pressure on Judge Walker to give me a death sentence." Braun said his attorneys responded by observing that the judge was a veteran and would not feel the pressure, and they predicted that the judge, in light of the economics, would send Braun back to serve his life sentence in New Mexico if he did not receive the death penalty in Oklahoma. Braun therefore concluded that he "probably stood a better chance with [the judge] than with a jury."

Notably, as OCCA observed, Braun never testified that he believed the judge promised to give him life, or that his attorneys assured him the judge would do so. In fact, Braun testified that his attorneys told him he had a "fifty-fifty shot" in front of the judge of receiving a sentence less than death, whereas he had only "about a ten percent shot" in front of a jury. Braun acknowledged that his attorneys' advice was "the best advice based on their experience, knowledge, and qualifications." From that advice, Braun admitted that he believed going before the judge was his "best chance[, e]ven though it wasn't a good one." Furthermore, Braun testified that he believed the judge when the judge told him

during the plea hearing that he could receive the death penalty. Indeed, Braun agreed with the prosecutor's characterization that he "rolled the dice and took [his] chances" by entering his plea.

For his part, Rowan testified at the motion to withdraw plea hearing that Hurst told Braun the judge would be more insulated from public opinion than a jury. Rowan also stated that the advice for Braun to plead nolo contendere was the best advice he could give under the circumstances. Rowan did not testify that he told Braun that the judge had promised a life sentence, or that Hurst had given Braun that impression. Additionally, in an affidavit appended to Braun's habeas petition below, Rowan denied having any ex parte conversation with the judge about Braun's sentence. Rather, it was Rowan's understanding that when Braun pled nolo, that was a "blind plea that carried no assurances that Judge Walker would return a sentence of less than death." Rowan's affidavit further stated that Hurst did not attempt to persuade the judge either.

Taken together, Braun and Rowan's testimony squarely refute Braun's contention that his plea was involuntary because his attorneys misled him into thinking the judge would give him a sentence less than death if he pleaded nolo contendere. Braun's attorneys made no guarantees regarding his sentence. Based upon their experience and expertise, they properly advised him that he had a better shot in front of the judge. See McMann v. Richardson, 397 U.S. 759, 770

(1970) ("Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing."); Wellnitz v. Page, 420 F.2d 935, 936-37 (10th Cir. 1970) ("An erroneous sentence estimate by defense counsel does not render a plea involuntary. And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary.") (citations omitted). Moreover, it is clear that Braun knew when he was entering his plea that he was taking his chances. His current claim to the contrary fails to convince us.

The OCCA's decision that Braun's plea was voluntary was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and it did not involve an unreasonable determination of the facts in light of the evidence. See 28 U.S.C. § 2254(d). Accordingly, we reject Braun's claim that his plea was involuntary, and affirm the district court denial of habeas relief on this claim.[7]

---

[7]In a subsidiary point, Braun argues that it was per se ineffective assistance of counsel to allow Braun to enter the plea "blind," that is, without a guarantee of the sentence. Braun does not cite any case law for this proposition, but rather relies on ABA Guidelines on guilty pleas, which discourage blind pleas in death

(continued...)

**CONCLUSION**

The district court's denial of Braun's petition for the writ of habeas corpus

is AFFIRMED.

---

[7](...continued)
penalty cases. The OCCA found this claim waived when Braun attempted to raise it for the first time in his state post-conviction proceeding. The OCCA also ruled this claim barred by res judicata, because the basis for the claim (ineffective counsel for advising Braun to enter the plea) was raised on direct appeal. See Braun II, 937 P.2d at 511. Braun fails to address the state court findings of procedural default and res judicata. Therefore, this argument deserves no further comment, other than the observation that Braun's recognition that he entered his plea blind undercuts his claim that he pleaded nolo contendere under the impression he would receive a sentence less than death.

Additionally, as with his waiver of counsel claim, Braun argues on the involuntary plea claim that he was denied a full and fair hearing in front of the Oklahoma courts and the district court, and that Oklahoma failed to follow its own law in denying Braun his motion to withdraw plea. We dismiss these claims as without merit.