**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 6, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CHRISTOPHER ROCCO VIGIL,

      Defendant - Appellant.

No. 14-8007
(D.C. No. 2:08-CR-00108-SWS-2)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **MATHESON**, and **BACHARACH**, Circuit Judges.

After pleading guilty to conspiracy to possess with intent to distribute methamphetamine, Christopher Rocco Vigil sought to withdraw his plea during the sentencing phase of his prosecution. His then-attorney, Nicholas Carter, informed the district court he could not join in that motion because he believed it lacked a factual or legal basis. By this time, several privately-retained and court-appointed counsel had withdrawn from Mr. Vigil's case, and the district court had warned Mr. Vigil that Mr. Carter would be his last court-appointed attorney. The court gave Mr. Vigil the choice

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

between following his attorney's advice and not filing the motion, or waiving his right to counsel and filing the motion pro se. Mr. Vigil opted to proceed without counsel and filed the motion pro se.

On appeal, Mr. Vigil argues his waiver of his Sixth Amendment right to counsel was not knowing and intelligent. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude Mr. Vigil knowingly and intelligently waived his right to counsel and affirm the district court.

## I.    BACKGROUND

On May 15, 2008, the government charged Mr. Vigil with conspiracy to possess with intent to distribute and to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A).[1]

---

[1] Mr. Vigil's first trial ended in a mistrial for reasons unrelated to Mr. Vigil. In that proceeding, Mr. Vigil's first attorney apparently never appeared on his behalf, and Mr. Vigil's second attorney withdrew for apparently benign reasons. His third and fourth attorneys, however, withdrew because Mr. Vigil "insist[ed] upon taking actions that [they] consider[ed] repugnant and with which [they were] in fundamental disagreement." Supp. ROA, Vol. I at 59. As the second trial approached, the district court appointed a fifth attorney to represent Mr. Vigil, Thomas Jubin. On October 7, 2009, Mr. Vigil entered his guilty plea before the trial. On February 17, 2010, Mr. Vigil failed to appear for sentencing and fled, remaining at large for almost two years. Mr. Jubin moved to withdraw from representation. The court then appointed a sixth attorney, Joelle Hadley-Day. Ms. Hadley-Day withdrew shortly after Mr. Vigil was apprehended because Mr. Vigil insisted upon filing a motion to withdraw his plea, an action she felt would be frivolous and thus in violation of her ethical obligations. She also expressed concern that Mr. Vigil was attempting to delay and deceive the court. Mr. Vigil's seventh attorney, Nicholas Carter, who represented Mr. Vigil until Mr. Vigil waived his right to counsel, withdrew for similar reasons.

Pursuant to a plea agreement, Mr. Vigil pled guilty to one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A).  The court permitted Mr. Vigil to remain out on bond for medical reasons related to a shoulder surgery and to undergo a follow-up test related to his donating a kidney.  Mr. Vigil failed to self-surrender for sentencing and fled to Mexico.  Shortly thereafter, Mr. Vigil's attorney withdrew, and the district court appointed Joelle Hadley-Day to represent him.  Mr. Vigil had sporadic contact with Ms. Hadley-Day until he was apprehended nearly two years later.  Shortly after his return, Ms. Hadley-Day moved to withdraw.

The district court conducted three hearings relevant to Mr. Vigil's waiver of counsel:  the hearing on Ms. Hadley-Day's motion to withdraw, the sentencing hearing, and the hearing on Mr. Vigil's motion to withdraw his guilty plea.

## A. *April 9, 2012 Hearing*

On April 9, 2012, the district court held a hearing on Ms. Hadley-Day's motion to withdraw.  Among other things, Ms. Hadley-Day recited the seven factors governing a plea-withdrawal articulated in *United States v. Black*, 201 F.3d 1296, 1299-1300 (10th Cir. 2000), and expressed her belief that Mr. Vigil's request to withdraw his plea was without merit.  The court granted Ms. Hadley-Day's request, and agreed to appoint new counsel for Mr. Vigil one last time.  It cautioned Mr. Vigil that failure to cooperate with

his next attorney, Mr. Carter, may be construed as a voluntary waiver of the right to counsel.[2]

## B. *March 22, 2013 Hearing*

The district court set sentencing for March 22, 2013. A few days before the hearing, Mr. Vigil wrote to the court requesting a new attorney because Mr. Carter refused to file a motion to withdraw his guilty plea. The court responded that it found no good cause for another lawyer to be appointed, denied the request, and advised Mr. Vigil to either proceed with Mr. Carter or represent himself.

At the sentencing hearing, Mr. Vigil insisted on moving to withdraw his guilty plea, and Mr. Carter refused to join that motion. The district court gave Mr. Vigil two options: keep Mr. Carter as counsel and do not file the motion, or proceed pro se and file the motion himself. The court advised Mr. Vigil that filing the motion would be deemed

---

[2] The court stated:

> I have been advised by [the Federal Public Defender] that Mr. Carter . . . will likely be assigned to represent Mr. Vigil and is likely to be contacting you tomorrow, Mr. Vigil, to undertake that process.
>     As I stated, I am willing to do this once; but if Mr. Carter is not able to satisfy your needs for legal counsel, you will be having yourself as a lawyer, and you will be forfeiting your right to an attorney in this process because of your inability to cooperate with the attorney that you have. So you understand that and we've discussed that. I just want to make sure it's clear so that if this matter comes back, I'm not going to delay it any further. We're going to go forward. So this is your opportunity to have a fresh set of eyes look at your situation and give you advice and represent your interests.

Supp. ROA, Vol. III at 20.

a voluntary waiver of counsel, and warned him in an extended colloquy of the perils of proceeding in this manner. In relevant part, the court stated,

> In representing yourself, you'll be placing yourself at the risks of not being learned in the law. Do you understand this? . . . [Y]ou will be placing yourself in a situation where you will be faced with the sentencing guidelines and the various issues—legal issues that may pertain to those, and you will also be trying to maneuver as a *pro se* attorney[.] . . . If you wish to go forward, I will let you file a motion to withdraw on your own, . . . [but] I can't give you an attorney to pursue a course of action that they do not believe, in their own professional judgment and candor to the Court, they can pursue. . . . You're aware of the charges against you and aware of the . . . issue with respect to sentencing. . . . You're familiar with the case and the charges . . . to which you pled guilty. . . . And you understand that you'll be representing yourself with respect to this matter on the issue of sentencing if the Court does not grant your motion to withdraw a change of plea? . . . There will be certain limitations in terms of the procedure at sentencing. There are the sentencing guidelines that will be used and utilized in this matter. You're not completely familiar with those. You understand that?

ROA, Vol. 3 at 25, 45, 48-49, 59. With some hesitation, Mr. Vigil indicated he understood the consequences of waiving this right and filed the motion. The court appointed Mr. Carter to act as standby counsel.

### C. *April 26, 2013 Hearing and Subsequent Proceedings*

Shortly thereafter, on April 26, 2013, the district court held a hearing on Mr. Vigil's pro se motion to withdraw his guilty plea. When Mr. Vigil requested that Mr. Carter "speak and take over as far as the proceedings go forward as far as questioning[,]" Mr. Carter agreed. *Id.* at 77. After one witness was examined, Mr. Vigil asked for a continuance because he had been unable to secure all of his witnesses. The court granted the continuance.

-5-

Before the hearing resumed, Mr. Vigil retained private counsel, Ronald Podboy. On May 14, 2013, the hearing continued with Mr. Podboy representing Mr. Vigil. Mr. Podboy represented Mr. Vigil for the remainder of the hearing and through sentencing.[3] On November 1, 2013, the district court denied Mr. Vigil's motion to withdraw his guilty plea. On January 21, 2014, the court sentenced Mr. Vigil to 168 months in prison and five years of supervised release. He timely appealed, arguing the court violated his right to counsel.

## II.    **DISCUSSION**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense." U.S. Const. amend. VI. A defendant may waive that right if three conditions are met. "First, the defendant must voluntarily assert his intention to represent himself; second, defendant must knowingly and intelligently relinquish the benefits of representation by counsel; and third, defendant must make this assertion in a timely fashion." *United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002) (quotations omitted). On appeal, Mr. Vigil argues that, although he acted voluntarily, he did not waive his Sixth Amendment right to counsel knowingly and intelligently.

---

[3] After Mr. Vigil was sentenced, he filed a pro se notice of appeal asking for court-appointed counsel to help with his appeal. We granted the request and appointed Megan Hayes to represent Mr. Vigil on appeal.

## A. *Standard of Review*

In evaluating the validity of a waiver of the right to counsel, we review legal conclusions de novo and the underlying factual findings for clear error. *Id.* (citing *United States v. Akers*, 215 F.3d 1089, 1096 (10th Cir. 2000)). The violation of a defendant's Sixth Amendment right to counsel by invalid waiver is not subject to harmless error review. *United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997) (citing *United States v. Allen*, 895 F.2d 1577, 1580 (10th Cir. 1990)).

## B. *Legal Background*

A defendant may waive the Sixth Amendment right to counsel and proceed pro se. *Faretta v. California*, 422 U.S. 806, 807 (1975); *Allen*, 895 F.2d at 1578. However, only a voluntary, knowing, and intelligent waiver is valid. *Turner*, 287 F.3d at 983.

A defendant may waive the right to counsel through an affirmative request or "by his conduct, particularly when that conduct consists of tactics designed to delay the proceedings." *United States v. Hughes*, 191 F.3d 1317, 1323 (10th Cir. 1999) (citing *United States v. Willie*, 941 F.2d 1384, 1389-91 (10th Cir. 1991)). But "[a] court is under no less obligation to ensure that waiver is knowing and intelligent when voluntariness is deduced from conduct than when it is asserted expressly." *Allen*, 895 F.2d at 1579 (citing *United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982)). The parties do not dispute that Mr. Vigil voluntarily waived his right to counsel by conduct.

A waiver is knowing and intelligent when the record establishes "the defendant had a sense of the magnitude of the undertaking and the inherent hazards of self-

-7-

representation at the time of his decision to proceed pro se." *Taylor*, 113 F.3d at 1141 (citing *United States v. Padilla*, 819 F.2d 952, 956 (10th Cir. 1987)). In making this determination, we consider the advisement given by the trial court, *see, e.g.*, *Allen*, 895 F.2d at 1578, the stage of the proceeding, *Braun v. Ward*, 190 F.3d 1181, 1186 (10th Cir. 1999), and other relevant "facts and circumstances," *Padilla*, 819 F.2d at 958. If these factors considered together indicate the defendant understood the magnitude and hazards of his or her undertaking, we will hold the waiver was knowing and intelligent. *See id*.

"Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding *pro se*." *Willie*, 941 F.2d at 1388 (citing *Faretta*, 422 U.S. at 835; *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948); *Allen*, 895 F.2d at 1578; *Sanchez v. Mondragon*, 858 F.2d 1462, 1467 (10th Cir.1988)).

The stage of the proceedings affects the type of advisement necessary to make a waiver valid. As the Supreme Court has stated, to determine "the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized[,]" the court must ask "what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage[.]" *Braun*, 190 F.3d at 1186 (quoting *Patterson v. Illinois*, 487 U.S. 285, 298 (1988)).

At one end of the spectrum, some proceedings entail no right to counsel and, therefore, require no waiver or warning at all. *Id*. (citing *Patterson*, 487 U.S. at 298) (referring to a post-indictment photographic display identification proceeding). At the other end of the spectrum, the defendant's interests in representation of counsel at trial are paramount.[4] "[R]ecognizing the enormous importance and role that an attorney plays at a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." *Id*. (citing *Patterson*, 487 U.S. at 298). When the waiver occurs at a stage between these two extremes, "the Court has 'defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel.'" *Id*. (quoting *Patterson*, 487 U.S. at 298). So long as the defendant is aware of these "'basic facts,'" the waiver is knowing and intelligent. *Id*. at 1187 (quoting *Patterson*, 487 U.S. at 298).

A less extensive on-the-record advisement may therefore suffice for waivers occurring in after-trial proceedings. *Braun*, 190 F.3d at 1186; *see also id.* at 1187 (quoting *United States v. Salemo*, 61 F.3d 214, 219 (3d Cir. 1995), and citing *United*

---

[4] Most, if not all, of the case law cited by the parties refers to the trial stage. Consequently, much of the analysis in these decisions is not specifically applicable to Mr. Vigil's waiver, which occurred after the plea obviated the need for trial. Indeed, we have previously deemed the primary authority in Mr. Vigil's brief—*Faretta*, 422 U.S. 806—"inapposite" to waivers occurring after trial. *Braun*, 190 F.3d at 1187.

*States v. Day*, 998 F.2d 622, 626 (8th Cir. 1993)).  At the plea-withdrawal hearing, a

defendant can benefit from counsel because the attorney would understand how to

navigate the substantive and procedural challenges, such as the grounds for withdrawal

and the examination and cross-examination of witnesses.  But the role of counsel at this

stage is "more limited than the role of counsel at trial[,]" especially where the issue

presented is discrete.  *Id.* at 1187.  Like at sentencing, the court's inquiry "need not be as

exhaustive and searching as a similar inquiry before the conclusion of trial."  *Id.* (quoting

*Salemo*, 61 F.3d at 219).

Our decision in *Braun* is instructive.  In *Braun*, the defendant pled nolo contendere

to several crimes, including first degree murder.  *Id.* at 1183.  After sentencing, he moved

to withdraw his plea and petitioned the court to appoint new counsel.  *Id.* at 1183-84.  At

the hearing on the motion, the defendant represented himself.  *Id.* at 1184.  On appeal, we

held his waiver of the right to counsel was knowing and intelligent because

> [t]he trial court informed Braun of the dangers of self-representation at the
> motion to withdraw plea hearing by warning Braun that he would be cross-
> examined if he took the stand and that he might have to cross-examine the
> state's witnesses.  The trial court also conveyed to Braun that his life was
> on the line.  Braun made it clear that he understood the objective of the
> hearing, and importantly, Braun testified that he had consulted with counsel
> prior to the hearing.  Thus, he had a clear idea of the strategy that he wished
> to pursue at the hearing.

*Id.* at 1187.

If the district court fails to conduct an on-the-record inquiry or does so

inadequately, a defendant may still waive the right to counsel knowingly and intelligently

-10-

if the "surrounding facts and circumstances" "demonstrate that [the defendant] actually understood his right to counsel and the difficulties of *pro se* representation." *Willie*, 941 F.2d at 1388-89. We therefore look at the "record as a whole[,]" *United States v. Weninger*, 624 F.2d 163, 167 (10th Cir. 1980), considering, among other things, the defendant's age, education, and experience with criminal trials and counsel, *Padilla*, 819 F.2d at 958 (citing *Maynard v. Meachum*, 545 F.2d 273, 279 (1st Cir. 1976)); the defendant's knowledge regarding the charges, penalties, and other matters pertinent to pro se representation as derived from other hearings in the matter, *Willie*, 941 F.2d at 1389 (relying on the arraignment to find defendant was "notified of the charges against him and of the potential penalties involved"); and other actions taken by the defendant in the course of the proceedings that demonstrate knowledge and intelligence. *Id.* (relying on "pretrial pro se petitions" as evidence that defendant understood his right to counsel). When these factors demonstrate the defendant was aware of the right to counsel and the difficulties of pro se representation, we must conclude the waiver was knowing and intelligent. *Id.*

## C. *Analysis*

Mr. Vigil contends the district court failed to (1) explain the defenses to a conspiracy charge or advise him of the factors that would determine whether he could withdraw his guilty plea and (2) place him under oath. Aplt. Br. at 12. For the reasons below, we conclude Mr. Vigil knowingly and intelligently waived his right to counsel and affirm the district court.

-11-

**1. Explaining Defenses to Conspiracy and Factors for Withdrawing a Guilty Plea**

Mr. Vigil contends his waiver was not knowing or intelligent because the district court "failed to advise him of the grounds he needed to establish to withdraw his guilty plea or possible defenses or mitigating circumstances that might be available to him." *Id*. At this stage of the proceedings, this type of extensive advisement is not required. If a waiver occurs before trial, the district court must ensure the defendant is apprised of all "facts essential to a broad understanding of the whole matter[,]" which may include the matters identified by Mr. Vigil. *Weninger*, 624 F.2d at 164 (quoting *Von Moltke*, 332 U.S. at 724). But at the plea-withdrawal and sentencing stage, the court need only address "'basic facts'" regarding the usefulness of counsel and the hazards of pro se representation. *Braun*, 190 F.3d at 1186 (quoting *Patterson*, 487 U.S. at 298).

The district court's colloquy and the surrounding facts and circumstances made Mr. Vigil's waiver knowing and intelligent.[5] When it became apparent at the sentencing hearing that Mr. Vigil was determined to withdraw his plea, the district court advised Mr. Vigil extensively about the perils of representing himself. It warned him that he would not have an attorney to file motions, advise him on the law and charges against him, handle sentencing, or navigate the remaining procedural requirements. The court

---

[5] Conceivably, if Mr. Vigil had succeeded in withdrawing his plea, he may have gone to trial. But given the fact that several attorneys had refused to file the motion on the basis of frivolity, the district court justifiably focused the waiver inquiry on the plea-withdrawal hearing because a trial was highly unlikely. If Mr. Vigil's motion to withdraw his plea were granted, the district court could have reconsidered the waiver issue at that point.

explained to Mr. Vigil that he lacked expertise in these areas and would have to face these challenges alone if he wished to pursue his motion. Mr. Vigil indicated he understood these risks. This colloquy adequately informed Mr. Vigil of the usefulness of counsel and the dangers of proceeding pro se at this stage.

Mr. Vigil's waiver was also knowing and intelligent because the court had adequately apprised him of the nature and potential consequences of his charges. *See Weninger*, 624 F.2d at 167. When Mr. Vigil entered his guilty plea, for example, he was apprised of what he would face if he went to trial and what to expect at sentencing. The district court listed all the elements of his crime, explained the range of sentencing, and discussed how the sentence would ultimately be determined, including the relevance of aggravating factors, such as criminal history. Additionally, at the hearing on Ms. Hadley-Day's motion to withdraw, the court warned Mr. Vigil of the challenges he would face without an attorney—"the potential of cross-examining witnesses, complying with the Rules of . . . Criminal Procedure, and essentially have [himself] as a client." Supp. ROA, Vol. III at 19.

Contrary to Mr. Vigil's contention, he was made aware of the defenses to conspiracy and the grounds needed to establish a plea-withdrawal. At Mr. Vigil's change of plea hearing on October 7, 2009, the district court asked, "[H]as [Mr. Jubin] discussed with you, [Mr. Vigil], the defenses that you could raise to this charge of conspiracy?" Mr. Vigil replied, "Yes, sir." ROA, Vol. 4 at 14. Further, before withdrawing, Mr. Carter indicated that he and Mr. Vigil "had very lengthy discussions about the motion to

withdraw, . . . its 'chances,' for lack of a better phrase, and what it means for him in a . . . variety of sort of ways." ROA, Vol. 3 at 41. Mr. Vigil demonstrated this knowledge when he drafted a pro se plea-withdrawal motion before waiving his right to counsel, in which he relied on factors to withdraw a plea articulated in *Black*, 201 F.3d at 1299-300.[6]

The district court also provided Mr. Vigil with standby counsel to clarify any remaining questions he may have had. As standby counsel, Mr. Carter was "available to respond to questions and facilitate any information regarding the legal procedures and information that [Mr. Vigil] may [have] need[ed]." ROA, Vol. 3 at 54. Mr. Vigil does not contend Mr. Carter was unable or unwilling to answer any legal questions he considered necessary for his defense.

Under the circumstances, Mr. Vigil understood the gravity of his right to counsel and the consequences of waiving that right.

## 2. Obligation to Place Under Oath

Mr. Vigil also argues his waiver was not knowing and intelligent because he was not put under oath at the sentencing hearing. Looking at the "record as a whole[,]" *Weninger*, 624 F.2d at 167, we disagree. Only one of the circumstances is that he was not under oath at the relevant hearings, but as described above, multiple circumstances—e.g., repeated and clear explanations and warnings from the court—point unmistakably to waiver of counsel in this case.

---

[6] Mr. Vigil did not explicitly refer to this case, but his argument reflected an awareness and understanding of the seven factors it explains.

-14-

This conclusion finds further support in *Phillips v. Murphy*, 796 F.2d 1303, 1307 (10th Cir. 1986), where we addressed the voluntariness of a guilty plea. The petitioner argued "that he should have been placed under oath at the time of the plea proceeding and that the failure to do so invalidates the proceeding." *Id*. We held "statements made in open court are accepted in our circuit and we perceive no impediment in the State Court proceedings because the petitioner was not placed under oath at the time the plea proceedings were held." *Id.* A plea hearing is similar to a hearing regarding a waiver of the right to counsel in that both involve waivers of constitutional rights. Thus, if open court statements not made under oath can be sufficient in the plea context, it follows they can be sufficient in the waiver-of-counsel context.[7] Mr. Vigil cites no law for the contrary proposition.

---

[7] *United States v. Ruiz-Bautista*, 466 F. App'x 741 (10th Cir. 2012), an unpublished case, does not undercut our reasoning. In *Ruiz-Bautista*, we stated, "a court accepting a guilty plea must place the defendant under oath." *Id.* at 744. We relied on Fed. R. Crim. P. 11(b) for this proposition, *id.*, which actually states, "[b]efore the court accepts a plea of guilty or nolo contendere, the defendant *may* be placed under oath." Fed. R. Crim. P. 11(b) (emphasis added). Whether an oath was mandatory was not at issue in *Ruiz-Bautista*, and was not mentioned beyond the court's statement cited above. As an unpublished decision, *Ruiz-Bautista* does not have precedential value, and we do not believe its brief treatment of this issue has persuasive value here.

## III.    **CONCLUSION**

For the foregoing reasons, we affirm the district court.[8]

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

---

[8] The court notes the two pending motions will be addressed in a separate order.